Estate of C. D. Gott, Deceased, David W. Gott and Isabella A. Gott, Executor and Executrix v. Commissioner.
Estate of C. D. Gott v. Commissioner
Docket No. 11670.
United States Tax Court
1947 Tax Ct. Memo LEXIS 151; 6 T.C.M. (CCH) 833; T.C.M. (RIA) 47196; July 7, 1947
*151 In 1943, and for a good many years prior thereto, C. D. Gott operated a business under the name of C. D. Gott Company. The principal part of the income of the business was from commissions on sales of textile yarns for manufacturers for whom C. D. Gott was agent. On or about July 1, 1943, an agreement was signed by C. D. Gott and his son, David W. Gott, who was then serving in the military services of the United States, in which it was agreed that they would thereafter conduct the business as partners with a division of profits, two-thirds to C. D. Gott and one-third to David W. Gott. Held, that inasmuch as the main part of the income of the business was from commissions on sales made by C. D. Gott as manufacturers' agent and capital was not an important income producing factor in the business and that in the taxable year David W. Gott rendered no substantial services to the business, no partnership between the two, father and son, is recognizable for income tax purposes. William G. Harvey, 6 T.C. 653, followed. Charles A. Noone, Esq., 603 Chattanooga Bank Bldg., Chattanooga, Tenn., for the petitioner. Newman A. Townsend, Jr., Esq., and Frank M. Thompson, Jr. *152 , Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in the income tax of estate of C. D. Gott, deceased, for the year 1943 of $7,676.99. In the determination of the deficiency the Commissioner made three adjustments to the net income of C. D. Gott as reported on his return for 1942. These adjustments were: (a) Rental income
$ 895.14
(b) Contributions
35.00
(c) Income of business
1,399.51
The Commissioner has made three adjustments to the net income of C. D. Gott for the year 1943 as reported on his return, as follows: (a) Income of business
$8,098.22
(b) Rental income
2,652.33
(c) Taxes deducted
35.17
Of the foregoing adjustments petitioner contests only one, namely, adjustment (a) for the year 1943. That adjustment was explained in the deficiency notice as follows: "(a) Excessive amount deducted for
auto, traveling and entertain-
ment expenses disallowed
$1,160.80
Business income reported on the
return filed by David W. Gott,
transferred
6,937.42
"It is held that a bona fide partnership for income tax purposes did not exist between *153 C. D. Gott and his son, David Wagner Gott, during the period May 1 to December 31, 1943, and that the entire income of C. D. Gott Company for the year 1943 is taxable to Estate of C. D. Gott, Deceased." Petitioner by an appropriate assignment of error contests adjustment (a) above wherein the Commissioner determined that no partnership existed in 1943 between C. D. Gott and his son, David W. Gott. Adjustments for the year 1942 are included in the determination of the deficiency for 1943 because of the "forgiveness" feature of the statute. Findings of Fact During the calendar year 1943 C. D. Gott was a resident of Chattanooga, Tennessee. His income tax return for that year was filed on the cash basis with the Collector of Internal Revenue for the District of Tennessee. C. D. Gott died April 9, 1944. His widow, Isabella A. Gott, and his son, David W. Gott, qualified as executrix and executor of the estate. During 1943 C. D. Gott, hereinafter referred to as petitioner, was in business as sales agent for a number of textile yarn manufacturers. Among the organizations which he represented were Oscar Heineman Corporation, American Enka Corporation, Cross Cotton Mills, A. H. Smyre *154 Corporation, and Aberfoyle Manufacturing Company. Petitioner founded this business in 1921 and it was conducted prior to 1943 as a sole proprietorship under the firm name of C. D. Gott Company. Capital was not an important income producing factor in the business of C. D. Gott Company. The income of the business consisted chiefly of commissions on sales. In 1943 it had a gross income of $56,415.32, of which $47,336.42 was derived from commissions. The growth and success of C. D. Gott Company subsequent to its founding in 1921 was due principally to petitioner's efforts, contact and ability. He arranged the agency contracts with the yarn manufacturers and made most of the sales upon which commissions were earned. In 1943 sales were easily made. The main question in that year was to get goods to sell on account of the war. The business in times past employed a number of persons but petitioner was always in active and complete charge of its operations. Petitioner had one son, David W. Gott, hereinafter referred to as David, who was about 23 years of age in 1943. For a number of years prior to 1943 petitioner and David made plans for the latter to enter petitioner's business upon *155 completion of his college education. To this end David attended Virginia Military Institute and Wharton School of Finance, University of Pennsylvania, where he took special courses on the subject of textiles, and during holidays and vacations from school David was employed by petitioner. He attended several textile manufacturers' conventions with petitioner and during summer vacations he operated a warehouse for petitioner. Immediately after completing his studies at Wharton School of Finance, University of Pennsylvania, David was called into service with the United States Army. He entered the Army on July 29, 1941, and was assigned to duty at Kelly Field, San Antonio, Texas. From 1941 to 1944 he was stationed at various points in Texas and in the latter year he was transferred overseas to the China-India-Burma theater. Subsequent to 1944 he was discharged from the Army and returned to civilian life. On or about July 1, 1943, petitioner and David executed the following written instrument: "THIS AGREEMENT, made and entered into on this the 28th day of June, 1943, but effective as of the 1st day of June, 1943, by and between Claude D. Gott, party of the first part, and David W. *156 Gott, party of the second part. "WITNESSETH: "WHEREAS, party of the first part has for some years been conducting in Chattanooga, Tennessee, the business of selling yarns, rayons, silks, etc., on a commission basis; and "WHEREAS, party of the second part desires to become a partner in said business, and party of the first part is willing that he become such partner; and "WHEREAS, the parties have agreed upon the terms and conditions of the said partnership, but desire that the same shall be evidenced by a written agreement: "NOW, THEREFORE, in consideration of the premises, and for other valuable consideration from each party to the other passing, receipt of which is hereby acknowledged, the parties hereto have and do mutually agree as follows: "1. That the party of the first part does hereby sell to the party of the second part a one-third interest in and to the business which has heretofore been conducted at Chattanooga, Tennessee, under the name of C. D. Gott Company, for which interest party of the second part agrees to pay to party of the first part the sum of ten thousand dollars, as follows: Two thousand five hundred dollars in cash simultaneously with the execution *157 of this agreement, the receipt of which is acknowledged by the signature of the party of the first part hereto, and the balance of seven thousand five hundred dollars shall be paid out of that part of the earnings of the partnership belonging to the party of the second part at the rate of two thousand five hundred dollars per year, provided such earnings will permit, and said balance shall be paid at a greater rate than two thousand five hundred dollars per year if the share of the profits to which the party of the second part is entitled, less his drawing account, will permit. "2. For the aforesaid consideration, party of the first part agrees that he will execute a bill of sale or other instrument conveying to the party of the second part an undivided one-third interest in and to any and all contracts which the party of the first part has with wholesalers, jobbers, etc. "3. The business shall hereafter be conducted in the name of C. D. Gott Co., and at its present location in Chattanooga, Tennessee, unless some other location shall be mutually agreed upon. "4. Party of the second part shall have a drawing account in the sum of two hundred and fifty dollars per month, which *158 he may withdraw every month, and which shall be charged against his part of the profits. Party of the first part shall have a drawing account in the sum of one thousand five hundreds dollars per month, which he may withdraw every month, and which shall be charged against his part of the profits. "5. Before any profits shall be set aside to, or credited to, either of the parties hereto, all expenses incident to the business shall be paid; and after such payment the party of the first part shall receive or be credited with two-thirds of the net profits of the business and party of the second part shall receive or be credited with one-third of such net profits. "6. The usual books of account shall be kept in a proper manner, and shall not be removed from the place of business without the consent of both parties hereto; but each party shall have free access to such books at all times. "7. Each party hereto shall diligently attend to the business, and devote his whole working time and attention thereto, but this clause shall not apply to the party of the second part while he is in the military services of the United States, during which time he shall devote only such time to the business *159 as is reasonably convenient; each party shall punctually pay his separate debts and indemnify the other partner and the assets of the firm against the same and all expenses on account thereof; shall forthwith pay over all moneys, checks and other negotiable instruments received by him for the firm into the bank account of the partnership; and each partner shall do and perform such other acts as shall be for the benefit of the business. "8. Neither partner shall, without the consent of the other, engage in any other business, nor loan any money or credit of the partnership to any other person, nor give any credit or promise for the payment of money on account of the firm unless in the ordinary course of business, nor enter into any bond or become endorser or surety for any person, nor assign or mortgage his share in the assets or profits of the partnership, or any part thereof; nor shall either of the parties do anything whatsoever which will or might result in loss to the partnership. "9. Party of the second part recognizes that this partnership is a personal working relationship, and agrees that he will not sell his interest therein without the written consent of the party of *160 the first part; and should any proposed purchaser not be entirely agreeable to the party of the first part then the party of the first part shall have and is hereby given the right to repurchase the one-third interest of the party of the second part at whatever its reasonable market value may be; however, said purchase price to be paid by the party of the first part shall not be in excess of the book value of such interest. "10. This partnership shall continue as long as mutually agreeable to the parties hereto, but it may be terminated at any time by either partner giving to the other thirty days' written notice of his intention to terminate the partnership agreement; and in case of such termination, party of the first part, whether he gives the notice of intention to terminate or not, shall have the right to buy the interest of the party of the second part at market value or book value, whichever is smaller; but should he not desire to exercise this right, then the party of the second part shall (have) the right, whether he gives the notice of termination or not, to buy the interest of the party of the first part at its reasonable market value, or book value, whichever is smaller. *161 "11. The bank account of the partnership shall be kept in the American Trust & Banking Company, at Chattanooga, Tennessee, unless some other bank is designated by mutual consent, and all funds of the partnership shall be deposited therein. "12. All checks drawn on the partnership fund, in excess of one thousand dollars for any one check, shall be signed by both of the partners; and the bank shall be notified of this limitation. "13. On June 1st of each year a statement shall be made showing the condition of the partnership and the net profits it has made during the last preceding twelve months, and the net profits, less amounts drawn as hereinbefore provided, shall be paid to or credited to the parties hereto in the following proportions: two-thirds to the party of the first part and one-third to the party of the second part. "14. If either partner shall die during the continuance of this partnership, the survivor may purchase the share of the deceased partner at its then market value, or book value, whichever is lesser; and if the surviving partner shall not exercise the option to purchase the share of the deceased partner, or if he shall be unable to do so, then the partnership *162 business shall be wound up and its assets distributed as required by law. "IN WITNESS WHEREOF the parties hereto have signed their names on the date first above mentioned. "Claude D. Gott, Party of the First Part "David W. Gott, Party of the Second Part" At the time this agreement was executed David was stationed in Texas with the United States Army. Petitioner mailed the instrument to him, and, after affixing his signature, David returned it to petitioner by mail. At the same time David forwarded petitioner his personal check for $2,500. This check was dated July 12, 1943 and was paid by the bank upon which it was drawn on August 2, 1943. The funds with which this $2,500 check was paid were accumulated by David through gifts from members of his family, at least $300 or $400 being given to him by petitioner, and through savings from Army pay and wages earned while working for petitioner during summer vacations from school. David Gott received his share of the profits as provided in the partnership agreement, reported and paid income taxes thereon. Petitioner had oral contracts with the various textile manufacturers which he represented. These manufacturers looked to and *163 relied upon petitioner for the performance of their contracts. Upon the death of C. D. Gott the companies in effect cancelled the oral contracts they had with him. Those companies would not permit David and his mother to continue representing them (David being in the Army and his mother having no experience), but they insisted that J. L. McAlister, who had been associated with petitioner for almost 15 years, should have an interest in the business. Thereupon a new partnership was formed, the partners being Mrs. C. D. Gott, David W. Gott and J. L. McAlister, each having a one-third interest; and since the death of McAlister, David has a two-thirds interest in the new partnership. The C. D. Gott Company filed a Form 1065, Partnership Return of Income, for the period May 1, 1943 to December 31, 1943, disclosing a net income of $20,812.27. This return stated that the partnership was formed May 1, 1943 with petitioner and David Gott as partners. The net income of C. D. Gott Company for the period from July 1, 1943 to December 31, 1943 was $14,584.77 computed as follows: Gross Income -
Commissions
$23,603.77
From sale of merchandise
5,307.21
Total Gross Income
$28,910.98
Expenses -
Salaries and wages
2,775.00
Freight
249.00
Professional fees
472.38
Interest
553.50
Taxes
18.10
Bad Debts
179.16
Depreciation - auto
117.05
Depreciation - furniture and
Fixtures
144.42
Auto expenses
582.37
Printing and supplies
81.14
Light and heat
28.85
Telephone and telegraph
836.75
Postage
80.76
Traveling
3,503.78
Dues and subscriptions
131.20
Sales discounts
173.69
Miscellaneous
1,213.08
Entertainment
3,185.98
Total expense
$14,326.21
NET INCOME
$14,584.77
*164 After entering the Army in 1941 David rendered no services of substantial value to C. D. Gott Company until his return to civilian life subsequent to 1944. Except for two or three short furloughs he was continuously stationed in Texas until sent overseas in 1944 and his duties in the Army occupied all his time. Opinion BLACK, Judge: The only issue which we have to decide in this proceeding is whether a valid partnership for income tax purposes came into existence between C. D. Gott and his son, David W. Gott, when they signed the partnership agreement set out in our findings of fact on or about July 1, 1943. The partnership agreement itself provided that it should be effective from June 1, 1943 notwithstanding it was signed about one month later. While this sort of a retroactive arrangement may be effective as between the parties, it could not be effective for income tax purposes. In other words, even assuming that a valid partnership was created for income tax purposes, the income of the business would not be partnership income prior to the date the partnership was created. See . Petitioner concedes as much and that all 1943 income of the *165 business prior to July 1, 1943 was taxable to estate of C. D. Gott. Petitioner contends, however, that of the net income of the business of $14,584.77 from July 1, 1943 to December 31, 1943, only two-thirds was taxable to estate of C. D. Gott and the remaining one-third was to taxable to David W. Gott because a partnership existed between them. So the issue which we have to determine is whether there was a valid partnership for income tax purposes between C. D. Gott and his son David from July 1, 1943 to December 31, 1943. It may well be, as petitioner argues, that a valid partnership existed between the two under the laws of the State of Tennessee but that fact is not decisive of the issue which we have here to decide. The question is: Was there a partnership recognizable for Federal income tax purposes? See . There, of course, have been many cases before this Court and other courts involving the troublesome subject of family partnerships. Some of these cases are cited by petitioner in his brief and some are cited by respondent. We shall not undertake to discuss all the cases cited. Suffice it to say that there is one line of cases *166 in which there is reasonable consistency in all the cases and that is where the operations which produce income are personal services in character, a family partnership cannot be effective to defeat tax of the income to the person who earns it. ; ; ; and . See also . Of allthe cases cited by the parties we think that the one wheere the facts most resemble those which we have here is In that case the taxpayer was a sales representative for several machinery manufacturers. His son worked with him at the office during summer vacations and on several occasions accompanied him on trips, visiting plants and meeting people. At college the son studied mechanical engineering for the purpose of preparing himself to enter business with his father. In May 1941, while the son was still in college, the taxpayer, his wife and the son executed a partnership agreement under the terms of which the taxpayer retained *167 a 50 per cent interest in his business and transferred 25 per cent to each of the other two. The wife and son contributed capital of $500 each, while the taxpayer contributed $1,000. Our Court sustained the Commissioner's disallowance of the partnership and held that all of the income of the business in 1941 was taxable to the father. In the course of our opinion we said: "* * * Petitioner's case is even more vulnerable than some by reason of the peculiar personal factor in the earning of the income in question. * * * The professional qualifications, and the personal service and contacts, attributable entirely to petitioner individually, were apparently responsible for the production of substantially all of the income. The value of the actual services of the son, if any, is not known. The interest of the partnership business in having him attend school and work for Sperry, as distinguished from the satisfaction of petitioner as father in the preparation of his son for a business career, is not persuasive. It would be a departure from reality to regard either as having justified his participation in partnership profits. * * *" In the instant case during 1943 David, on account of *168 being in the military services, did not participate in the control and management of C. D. Gott Company except perhaps to a very minor degree either before or after the partnership agreement was executed. The evidence indicates that petitioner had full and complete charge of the business at all times during the year and its income was largely from commissions earned as manufacturers' agent in the sale of textile yarns, just as in the Harvey case the principal income of the business was from commissions on the sale of machinery. It is true that there are some differences in the facts of the instant case from those which were present in the Harvey case. In the Harvey case the son only contributed $500 to the capital of the partnership whereas in the instant case David Gott contributed $2,500 to the capital of the business, only $300 or $400 of which he had previously received as a gift from his father. Also in the Harvey case the son was not prevented from rendering services to the partnership by reason of his being in the armed forces of the United States. Whereas in the instant case it seems reasonable to assume that if David had not been serving in the armed forces he would have devoted *169 his entire time to the business of C. D. Gott Company after the partnership agreement was signed on or about July 1, 1943. However, in view of the fact that the income of C. D. Gott Company during the period here involved was largely from commissions due to the personal services of C. D. Gott, we do not think that the foregoing differences in the facts of the instant case from those which were present in the Harvey case are of controlling significance. We think the instant case is controlled by , and the cases upon which it relied. Petitioner in his brief has cited and commented upon cases which are undoubtedly favorable to his contention. For example, in both his original brief and his reply brief he cites and comments upon . That case undoubtedly supports petitioner's contention but it was decided long before , and can now no longer be regarded as authority in view of what the Supreme Court decided in the Tower case. We, therefore, sustain respondent's determination that during the period in question a valid partnership for income tax purposes did not exist *170 between C. D. Gott and his son, David W. Gott. Decision will be entered for the respondent.